UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No. 1:20-cr-21-LM |
| | ) | |
| | ) | |
| CHRISTOPHER GELINAS | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM, OBJECTION TO GUIDELINE CALCULATION AND MOTION FOR VARIANCE**

Christopher Gelinas, through counsel, files this sentencing memorandum and urges the court to impose a sentence of 96 months in custody followed by four years of supervised release. In reaching such a sentence, Gelinas requests the court: 1) sustain Gelinas's objection to the application of the two-level dangerous weapon enhancement under 2D1.1(b)(1); and 2) approve a variance based upon a categorical policy disagreement with the harsh, purity-driven "ice" methamphetamine guidelines; or 3) alternatively, approve a *Booker* variance from the "ice" guideline based on his substance abuse history and upbringing; and 4) recommend him for the Residential Drug Abuse Program (RDAP).

I. Procedural Posture

On August 31, 2020, Gelinas pleaded guilty to Counts 1 and 2 of the Indictment. Each of these counts alleges Gelinas distributed 5 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii). That plea was entered pursuant to a "binding" plea under Fed. R. Crim. P. 11(c)(1)(C) wherein the parties agreed that a total sentence of 96 months is the appropriate custodial sentence in this case. Pursuant to that plea agreement, should the court accept the sentence, the government will move to dismiss Count 3 of the Indictment, which had alleged Gelinas possessed with an intent to distribute 50 grams or more of methamphetamine

in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii).

II. Probation's Advisory Guideline Range Calculation

Probation has calculated a total offense level of 31. First, applying the "ice" methamphetamine guideline, probation found a base offense level of 32. *PSR at p. 6.* Additionally, probation applied a two-level increase to that base offense level "because the defendant possessed a dangerous weapon during the offense (i.e. hunting knife)." *Id.* Finally, probation awarded the defendant a reduction of three-levels for acceptance of responsibility. *Id.* As a result, probation reports a total offense level of 31.

III. Objection to the Guideline Sentencing Range Calculation

Gelinas objects to probation's guideline calculation on the grounds that the record does not support the application of the dangerous weapon enhancement under 2D1.1(b)(1). Discovery indicates that at the time Gelinas was arrested he was travelling in a car with three other individuals. He was seated in the right rear passenger seat. Upon information and belief, he was not the registered owner of the vehicle. At the time, Gelinas was arrested, he was ordered to get out of the car. According the report of NH State Trooper Stefan Czyzowiski, upon Gelinas standing the trooper observed a fixed blade knife approximately 8" in length sitting on the seat where Gelinas had been seated. It appears that Gelinas's proximity to this weapon is the sole basis for probation concluding that Gelinas possessed the weapon at the time of his arrest. "It is well established that mere presence as a passenger in a car from which the police recover weapons does not establish possession." *United States v. Soto*, 770 F.2d 558, 560 (9th Cir. 1986) ("The mere proximity of a weapon to a passenger in a car goes only to its accessibility, not to the dominion or control which must be proved to establish possession.").

Gelinas asserts, therefore, that there is insufficient reliable evidence in the record to establish by a preponderance of the evidence that he possessed weapon identified by probation.

Further, Gelinas notes that while the term of incarceration in this case has been fully negotiated pursuant to "C" plea, the Court's finding with respect to the dangerous weapon enhancement remains material. Gelinas requests this Court recommend him for RDAP. The completion of that program entitles non-violent offenders to a sentence reduction under 18 U.S.C. § 3621(e)(2). Gelinas is appropriate for that treatment given his lengthy substance misuse history. If, however, the Court finds that Gelinas possessed a dangerous weapon under 2D1.1(b)(1), Gelinas would no longer be eligible for a sentence reduction for completion of RDAP as his offense of conviction would be deemed by BOP to be a violent offense. *See* 28 CFR 550.58 and P.S. 5162.05 at p. 10. For the reasons stated above, Gelinas objects to the application of the two-level dangerous weapon enhancement.

IV. Variance Based Upon a Categorical Policy Disagreement

The Court should approve a variance in this case based upon a categorical policy disagreement with the "ice" guideline. Gelinas objects to the mechanical application of the "ice" guideline to his case on the grounds previously accepted by this Court in *USA v. Michael Bean*, 18-cr-00057-LM. Specifically, Gelinas submits that this Court should vary from the "ice" guildeline because: "(1) there appears to be no empirical basis for the Sentencing Commission's harsher treatment of offenses involving higher purity methamphetamine; (2) methamphetamine purity is no longer an accurate indicator of a defendant's role in a drug-trafficking conspiracy; and (3) the methamphetamine guidelines create unwarranted sentencing disparities between methamphetamine offenses and offenses involving other major drugs." *Id* at Dkt. 101 issued

March 1, 2019.

V. Booker Variance under 18 U.S.C. 3553(a)

Alternatively, Gelinas urges the Court to accept a variance pursuant to *Booker v. United States*, 543 U.S. 220 (2005). Although the sentencing process must begin with a guideline calculation, the guidelines are merely advisory and district courts must consider all the factors listed in 18 U.S.C. 3553(a) in determining a sentence. *See Gall v. United States*, 128 S.Ct. 586, 596-97 (2007). Under 18 U.S.C. 3553(a), the Court is charged with imposing a sentence that is "sufficient but not greater than necessary" to achieve the purposes of sentencing.

Here, the history and characteristics of the defendant support a variance. 18 U.S.C. 3553(a)(1). Gelinas has accepted responsibility for his actions. Gelinas sought to resolve this case quickly, when few matters were moving through the Courts due to the pandemic, in an effort to resolve this matter without using substantial judicial resources.

A sentence of 96 months is a sufficiently deterrent and reflects the seriousness of the offense conduct. Though Gelinas has had several prior contacts with the State criminal justice system, he has never been sentenced to prison. Now, Gelinas faces a sentence of 96 months in federal custody. This drastic increase in consequences is sufficient to dissuade Gelinas from engaging in future criminal conduct. The severity of the proposed sentence would promote respect for the law within the community.

Further, Gelinas's upbringing and personal history reflect ongoing and pervasive substance misuse issues, which remain largely untreated. These issues started at an early age. Gelinas comes from a family that has been ravaged by addiction. He reports using substances often in conjunction with close family members including his mother and brother. Prior to his

arrest, Gelinas states he was using 10 to 14 grams of methamphetamine per day. Trooper Czyzowski's report notes that at the time of Gelinas's arrest he and his girlfriend "had obvious physical characteristics of drug users (open sores and scabs to hands and face, dazed appearance, sweating, disheveled appearance, inability to focus, fidgety, etc.)." During the commission of these offenses, Gelinas was in active use. His motive, therefore, was not simply financial. Instead, through the drug distribution that brought him before this Court, Gelinas sought to perpetuate his own addiction by any means necessary.

Gelinas now seeks treatment to break that cycle, maintain long-term sobriety and ensure he will not reoffend. He requests a recommendation for RDAP. During the substantial sentence agreed upon, Gelinas believes he can gain the tools necessary to tackle his addiction and return to our community as a productive citizen, worker, brother, and son. In sum, Gelinas's upbringing and significant, untreated substance misuse history justify a variance.

WHEREFORE, for the reasons stated above, Christopher Gelinas requests that the Court:

A. Sustain the Defendant's objection to the two-level dangerous weapon enhancement; and

B. Recommend the Defendant for RDAP; and

C. Grant the Defendant's request for a variance; and

D. Impose a sentence of 96 months in custody followed by a term of four years supervised release.

No separate memorandum of law is attached as all points and authorities are contained herein.

Respectfully Submitted,
JEFFREY D. ODLAND
GREENBLOTT & O'ROURKE PLLC

*/s/Jeffrey D. Odland*

November 30, 2020

Jeffrey D. Odland, Esq.
NH Bar #18967
PO Box 465
Contoocook, NH 03229
(603) 746-1330

CERTIFICATE OF SERVICE

I, Jeffrey Odland, hereby certify that this document filed through the ECF system will be sent electronically to AUSA John Davis on behalf of the Government on this date.

*/s/Jeffrey D. Odland*

Jeffrey D. Odland, Esq.